IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DONNA M. KELLEY                                                                                                                    PLAINTIFF

VS.                                               CIVIL NO. 06-3044

MICHAEL J. ASTRUE[1], COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                             DEFENDANT

**MEMORANDUM OPINION**

Donna Kelley ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits ("DIB") under Title II of the Act.

**Background:**

The application for DIB now before this court was filed on March 21, 2001, alleging an amended onset date of February 22, 2002, due to lower back, tail bone, and leg pain; weakness in her left knee; and, arthritis in her shoulders. (Tr. 80, 355). An administrative hearing was scheduled for April 25, 2002. At the time of the hearing, plaintiff's counsel announced that plaintiff did not wish to pursue her claim because she had returned to full-time work after her alleged onset date of March 2, 2001. (Tr. 344-347). Apparently, plaintiff worked full-time for approximately ten months and then began looking for lighter-level work to accommodate her physical limitations. Accordingly, the case was dismissed. However, before the order of dismissal was mailed, plaintiff contacted the Social Security Administration and requested that her claim be reopened. An administrative hearing was

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

then held on August 13, 2002, and an unfavorable decision entered on December 17, 2002. (Tr. 12-19). On appeal to this court, the case was remanded for further proceedings. (Tr. 245-253). A supplemental administrative hearing was held on January 26, 2005. (Tr.269-280). Plaintiff was present and represented by counsel.

The ALJ issued a written decision on September 23, 2005, finding that, although severe within the meaning of the Regulations, plaintiff's impairments did not meet or medically equal an impairment contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4. (Tr. 241). The ALJ then determined that plaintiff retained the residual functional capacity ("RFC") to lift and carry 15 pounds frequently and 20 occasionally; sit, stand, and walk about six hours during an eight-hour workday; and, occasionally balance, crouch, crawl, kneel, and stoop. However, due to mental limitations, he determined that she had a limited but satisfactory ability to relate to co-workers; interact with supervisors; understand, remember, and carry out simple instructions; maintain personal appearance; and, demonstrate reliability. Further, he concluded that plaintiff had between a satisfactory and seriously limited ability to understand, remember, and carry out detailed instructions; behave in an emotionally stable manner; and, relate predictably in social situations. Plaintiff was also found to have a seriously limited but not precluded ability to follow work rules, deal with the public, use judgment, deal with work stresses, function independently and maintain attention and concentration, as well as no useful ability to understand, remember, and carry out complex instructions. With the assistance of a vocational expert ("VE"), the ALJ then concluded that plaintiff could perform work as a motel maid, home health companion, and poultry eviscerator. (Tr. 240).

At the time of the ALJ's decision, plaintiff was forty-two years old and possessed a tenth grade education. (Tr. 13, 233). The record reveals that she has PRW as a certified nurse's aide in a nursing home and a sewing machine operator in a factory. (Tr. 13, 233).

On May 25, 2006, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Although both parties were afforded an opportunity to file appeal briefs, plaintiff has chosen not to do so. The case is now ready for decision.

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant

AO72A
(Rev. 8/82)

has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The administrative record before the court discloses that plaintiff has sought treatment for knee and lower back pain, as well as arthritis in her shoulders. (Tr. 177-199, 205-210). She was prescribed Darvocet, Robaxin, Naproxen and Ibuprofen. (Tr. 180).

In 1999, an MRI of plaintiff's lumbar spine revealed a degenerative disk signal at the L4-L5 and L5-S1 levels without disk narrowing, central bulging at each level, minimal disk protruding into the left paramedial, and left neural foraminal position at the L4-5 level. (Tr. 194).

In August 2001, an MRI of plaintiff's lumbar spine revealed mild diffuse intervertebral disk bulging at the L4-5 and L5-S1levels with intervertebral disk desiccation. (Tr. 191). At this same time, an MRI of plaintiff's left knee revealed a tear in the middle and posterior one-third of the medial meniscus, a meniscal cyst in the anterior one-third of the lateral meniscus, and a red marrow conversion or persistence in the metaphyses of the tibia and femur. (Tr. 192).

On September 5, 2001, plaintiff underwent a left arthroscopic partial meniscectomy. (Tr. 208-209). In January of 2002, Dr. Rolland Lee Bailey, recorded plaintiff's complaints of pain in her left shoulder. (Tr. 204). An examination revealed a tender lumbar spine, a painful range of motion in the left knee, and edema. Plaintiff was administered a steroid injection and given samples of another medication. (Tr. 204).

In February of 2002, Dr. Bailey noted some crepitis with walking in plaintiff's left knee, but a full range of motion with minimal discomfort. (Tr. 202). He also diagnosed her with moderate lumbar myositis.[2] Plaintiff's medications included Tiazac, Naprosyn, Vicodin, and Robaxin. (Tr. 202).

In March of 2002, plaintiff reported pain in her back and left leg. Dr. Bailey noted that plaintiff had a positive straight leg raise on the left and referred her to a neurologist for an examination . (Tr. 201).

On July 9, 2002, Dr. Bailey completed an RFC assessment. (Tr. 211-215). He concluded that plaintiff could sit, stand and walk about two hours each out of an eight-hour workday, for ten to fifteen minutes uninterrupted, and could occasionally lift and carry less than ten pounds. (Tr. 211-215). Further, he also determined that plaintiff could never twist, stoop, crouch, or climb ladders and should rarely climb stairs. Although Dr. Bailey indicated plaintiff would be able to perform a low stress job, he concluded that she would need a position that would permit shifting of positions at will and allow unscheduled breaks. (Tr. 213). He also indicted that plaintiff would miss more than four

---

[2]Myositis is the general term for swelling of the muscles. *See* The Myositis Association, *Types of Myositis*, *at* www.myositis.org. Injury, infection, certain medicines and even exercise can cause muscle swelling. *Id*.

days of work per month due to her impairments or treatment. Dr. Bailey based this assessment on his findings that plaintiff had a herniated disc of the lumbar spine and osteoarthritis. (Tr. 211). He rated her prognosis as "fair at best." (Tr. 211).

On October 7, 2002, Dr. Charles D. Varela performed a consultative examination of plaintiff. (Tr. 216-223). Plaintiff complained of lower back, left knee, and left hip pain. She indicated that the pain radiated down her left leg into her ankle. An examination revealed a full range of motion with pain, with even gentle head extension; slight anterior laxity in the left knee; and, an inability to tolerate standing or bending forward more than twenty degrees. Plaintiff also had some positive Waddell's test and stocking-glove anesthesia of the right leg. (Tr. 221).

On September 27, 2004, plaintiff was reevaluated by Dr. Varela. (Tr. 331-334). An examination revealed a full range of motion in the cervical spine with some limitation to left rotation that was not consistently reproducible, a full range of motion in the upper extremities, break-away strength testing particularly on the left side, no atrophy, decreased grip strength on the left side, no joint effusion or motion limitations in the lower extremities, and broad band-like tenderness at the L3-5 level. Plaintiff could not tolerate standing flexion but had 90 degrees of seated flexion. Extension was also limited to 0 degrees with lateral flexion left and right limited as well. Pain with axial rotation was present and Dr. Valera noted stocking glove anesthesia of the left lower extremity. Her reflexes were symmetric but her strength effort was markedly diminished. Although there appeared to be significant pain magnification, Dr. Varela could not detect specific evidence of impairment based upon her orthopaedic exam. Therefore, he recommended no restrictions. (Tr. 331-332).

7

On September 28, 2004, Dr. Bailey responded to the ALJ's request for additional information with a letter stating that he had not treated the plaintiff in over two years. (Tr. 330). As such, he was unable to provide any additional objective evidence other than that contained in the medical records previously forwarded to the ALJ. However, he did indicate that he could provide updated information if he were allowed to reevaluate plaintiff. (Tr. 330).

In spite of this evidence, the ALJ concluded that plaintiff could lift and carry 15 pounds frequently and 20 occasionally and sit, stand, and walk about six hours during an eight-hour workday. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). The evidence clearly indicates that plaintiff has limitations with regard to her back and her left knee that could inhibit her ability to walk and stand for extended periods of time, as well as lift and carry 15 pounds frequently and 20 pounds occasionally. Plaintiff's own treating physician, Dr. Bailey, even determined that plaintiff had these limitations.

Although we note the ALJ's concerns regarding Dr. Bailey's RFC assessment, we can find no evidence to indicate that Dr. Bailey's opinion was not based on objective medical evidence. We are also cognizant of Dr. Varela's conclusion that plaintiff has no restrictions. However, we do not find that the objective medical evidence, including the two consultative exams conducted by Dr. Varela, supports this determination. Therefore, because Dr. Bailey is plaintiff's treating physician, his opinion is entitled to significant weight. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight). Accordingly, we do not find substantial evidence to support the ALJ's RFC assessment and believe

that remand is necessary to allow the ALJ to reevaluate the evidence concerning plaintiff's physical impairments.

In addition, we also note that plaintiff has been diagnosed with mild mental retardation. (Tr. 341). However, we note that this diagnosis was not included in the hypothetical question the ALJ relayed to the vocational expert. As such, on remand, the ALJ is directed to precisely describe all of the plaintiff's credible impairments in the hypothetical question posed to the vocational expert. *See Sigh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

## **Conclusion:**

Based on the foregoing, we reverse the ALJ's decision and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 1st day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE